**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

LEANNE REITER, Derivatively on Behalf of KODIAK OIL & GAS CORPORATION, and Individually on Behalf of Herself and All Others Similarly Situated,

                Plaintiff,

     v.

LYNN A. PETERSON,
JAMES E. CATLIN,
WILLIAM J. KRYSIAK,
RODNEY D. KNUTSON,
HERRICK K. LIDSTONE, JR.,
WHITING PETROLEUM CORPORATION, and
1007695 B.C. LTD.,

                Defendants,

     -and-

KODIAK OIL & GAS CORPORATION, a Canadian Corporation,

                Nominal Defendant.

---

**VERIFIED SHAREHOLDER DERIVATIVE AND CLASS ACTION COMPLAINT
FOR BREACH OF FIDUCIARY DUTY**

---

## SUMMARY OF THE ACTION

1.      This is a shareholder derivative and class action brought by plaintiff on behalf of all the holders of Kodiak Oil & Gas Corp. ("Kodiak" or the "Company") common stock (the "Class") and derivatively on behalf of Kodiak against Kodiak and its affiliates, the members of Kodiak's Board of Directors (the "Board" or "Individual Defendants"), and Whiting Petroleum Corporation ("Whiting") and its affiliates.  This action seeks to enjoin defendants from further breaching their fiduciary duties in their pursuit of a sale of the Company at an unfair price through an unfair process to Whiting (the "Proposed Transaction").

2.      On July 13, 2014, defendants announced that the Board agreed to sell Kodiak to Whiting for approximately $6 billion in stock.  Pursuant to the parties' Arrangement Agreement dated July 13, 2014 (the "Arrangement Agreement") Kodiak shareholders will receive 0.177 of a share of Whiting common stock for each share of Kodiak stock they own (the "Proposed Consideration").  Based on the closing price of Kodiak's common shares of $14.23 on July 11, 2014, the Whiting distribution has a current value of $13.90.  If the Proposed Transaction is allowed to close, Whiting shareholders will own approximately 71% percent and Kodiak shareholders will own 29% of the go-forward company.

3.      Kodiak is an independent energy company focused on the exploration, exploitation, acquisition, and production of natural gas and crude oil in the United States. Kodiak's oil and natural gas reserves and operations are primarily concentrated in two Rocky Mountain basins, the Williston Basin of North Dakota and Montana and the Green River Basin of Wyoming and Colorado.

4.      In their rush to sell the Company to Whiting, the Individual Defendants negotiated a plainly unfair price for Kodiak shareholders.  The Proposed Consideration is

actually a 2.3% *discount* to the Company's share price the day prior to the announcement of the Proposed Transaction.   In comparison, over the past five years, the average premium for acquisitions in the oil and gas exploration and production industry worth between $1 billion and $5 billion was over 35%.

5.       In addition to being unfair compared to other deals, the Proposed Transaction fails to value Kodiak's recent impressive performance and long-term prospects.   In the Company's most recent fiscal quarter, Kodiak reported increases in oil and gas sales of 73% versus the prior year period, an increase in adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") of 50% from a year ago and an increase in net cash provided by operating activities increased 55% compared to the same quarter 2013. Kodiak also reported a 56% increase in equivalent sales volumes with 3.5 million barrels of oil equivalent ("MMBOE") sold during the second quarter of 2014, as compared to 2.1 MMBOE in the first quarter of 2013.

6.       Unfortunately, the Individual Defendants are attempting to prevent plaintiff and the Class from realizing the benefits of the Company's strong financial results and bright future by inexplicably deciding to sell Kodiak now—thus breaching their fiduciary duty to maximize shareholder value in connection with the Proposed Transaction.

7.       The Board further breached its fiduciary duties by agreeing to preclusive deal protection devices in connection with the Arrangement Agreement the Company entered into on July 13, 2014, which all but ensure that the inadequate Proposed Transaction will be consummated.   These provisions, which further undermine shareholder value by precluding any competing offers for the Company from emerging, include: (i) a no-solicitation provision prohibiting the Company from properly shopping itself; (ii) a three business-day matching rights period during which Whiting has the option to match any superior proposal received by the

Company; and (iii) a termination fee of $130 million payable by the Company to Whiting in the event that, among other things, an unsolicited superior offer materializes and is accepted. Collectively, these provisions reflect an attempt by the Individual Defendants to lock up the Proposed Transaction at a price that grossly undervalues the Company, thereby securing for themselves the personal financial benefits they have negotiated for themselves in connection with the closing of the Proposed Transaction.

8.      In pursuing the unlawful plan to sell the Company via an unfair process and at a potentially inadequate price, each of the defendants has violated applicable law by directly breaching and/or aiding and abetting the other defendants' breaches of their fiduciary duties of loyalty and due care, among others.  This action seeks to enjoin the Individual Defendants from further breaching their duties in connection with the Proposed Transaction.  Specifically, to remedy the defendants' legal violations as set forth herein, plaintiff seeks, inter alia: (i) the disclosure of additional material information concerning the Proposed Consideration; (ii) injunctive relief preventing consummation of the Proposed Transaction unless and until the Company adopts and implements a procedure or process designed to obtain a transaction that provides the best possible terms for shareholders; (iii) a directive to the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of Kodiak's shareholders; and (iv) rescission of, to the extent already implemented, the Arrangement Agreement or any of the terms thereof.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive

action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) Kodiak maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

12.     Plaintiff Leanne Reiter is, and at all times relevant hereto, was a shareholder of Kodiak.  Plaintiff is a citizen of California.

13.     Nominal Defendant Kodiak is a Canadian corporation with principal executives offices located at 1625 Broadway, Suite 250, Denver, Colorado.   Accordingly, Kodiak is a citizen of Canada and Colorado.  Kodiak is an independent energy company focused on the exploration, exploitation, acquisition, and production of natural gas and crude oil in the United States.  Kodiak's oil and natural gas reserves and operations are primarily concentrated in two Rocky Mountain basins, the Williston Basin of North Dakota and Montana and the Green River Basin of Wyoming and Colorado.  Upon completion of the Proposed Transaction, defendant

1007695 B.C. Ltd. ("Acquiror Canadian Sub"), a wholly owned subsidiary of defendant Whiting will merge with and into Kodiak, with Kodiak surviving as a subsidiary of defendant Whiting.

14.     Defendant Lynn A. Peterson ("Peterson") is Kodiak's President and Chief Executive Officer ("CEO") and has been since July 2002; Chairman of the Board and has been since June 2011; and a director and has been since November 2001.  Defendant Peterson is a co-founder of the Company.  Defendant Peterson is expected to be elected to the board of directors of the combined company.  Defendant Peterson is a citizen of Colorado.

15.     Defendant James E. Catlin ("Catlin") is Kodiak's Executive Vice President of Business Development and has been since June 2011 and a director and has been since February 2001.  Defendant Catlin was Kodiak's Chairman of the Board from July 2002 to June 2011; Secretary from July 2002 to May 2008; and Chief Operating Officer from June 2006 to June 2011.  Defendant Catlin is a co-founder of the Company.  Defendant Catlin is expected to be elected to the board of directors of the combined company.  Defendant Catlin is a citizen of Colorado.

16.     Defendant William J. Krysiak ("Krysiak") is a Kodiak director and has been since September 2010 and Lead Director and has been since at least May 2013.  Defendant Krysiak is a citizen of Colorado.

17.     Defendant Rodney D. Knutson ("Knutson") is a Kodiak director and has been since March 2001.  Defendant Knutson is a citizen of Colorado.

18.     Defendant Herrick K. Lidstone, Jr. ("Lidstone") is a Kodiak director and has been since March 2006.  Defendant Lidstone is a citizen of Colorado.

19.     Defendant Whiting is a Delaware corporation with principal executive offices located at 1700 Broadway, Suite 2300, Denver, Colorado.  Accordingly, defendant Whiting is a

citizen of Delaware and Colorado. Defendant Whiting is an independent exploration and production company with an oil focused asset base. Defendant Whiting controls one of the largest acreage positions in the Bakken resource play in North Dakota, and is the second largest oil producer in the state. Upon completion of the transaction defendant Kodiak will become a wholly owned subsidiary of defendant Whiting.

20. Defendant Acquiror Canadian Sub is a Canadian company and a wholly owned subsidiary of defendant Whiting. Accordingly, defendant Acquiror Canadian Sub is a citizen of Canada. Upon completion of the Proposed Transaction, defendant Acquiror Canadian Sub will merge with and into defendant Kodiak and cease its separate company existence.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

21. Under Canadian law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; or (ii) a breakup of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, including a significant premium at the highest price attainable in the market. To diligently comply with these duties, neither the directors nor the officers may take any action that:

(a) adversely affects the value provided to the corporation's shareholders;

(b) will discourage, inhibit, or deter alternative offers to purchase control of the corporation or its assets;

(c) contractually prohibits themselves from complying with their fiduciary duties;

(d) will otherwise adversely affect their duty to secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)      will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

22.      In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Kodiak, are

23.      obligated under Canadian law to refrain from:

(a)      participating in any transaction where the directors' or officers' loyalties are divided;

(b)      participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)      unjustly enriching themselves at the expense or to the detriment of the public shareholders.

24.      The Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties and aiding and abetting such breaches, including their duties of loyalty, good faith, and independence owed to plaintiff and other public shareholders of Kodiak.

25.      Defendants are obtaining for themselves personal benefits, including personal financial benefits not shared equally by plaintiff or the Class.  Accordingly, the Proposed Transaction will benefit the Individual Defendants in significant ways not shared with Class members.  As a result of the Individual Defendants' self-dealing and divided loyalties, neither plaintiff nor the Class will receive adequate or fair value for their Kodiak common stock in the Proposed Transaction.

## THE PROPOSED TRANSACTION

26.     On July 13, 2014, Kodiak and Whiting issued a joint press release announcing the Proposed Transaction.   The press release explained that Whiting had entered into the Arrangement Agreement with Kodiak, whereby it will acquire Kodiak in exchange for 0.177 shares of Whiting stock.   Notably, upon completion of the Proposed Transaction, Whiting shareholders will own approximately 71% of the new combined entity and Kodiak shareholders will own approximately 29%.  The press release stated, in relevant part:

Whiting Petroleum Corporation (NYSE: WLL) ("Whiting") and Kodiak Oil & Gas Corp. (NYSE: KOG) ("Kodiak") today announced a definitive agreement pursuant to which Whiting will acquire Kodiak in an all-stock transaction valued at $6.0 billion, based on the closing price of Whiting on July 11, 2014, and including Kodiak's net debt of $2.2 billion as of March 31, 2014.

The transaction will create the largest Bakken/Three Forks producer with over 107,000 barrels of oil equivalent per day of production in the first quarter of 2014, 855,000 combined net acres and an inventory of 3,460 net future drilling locations. The combined company's leading oil-weighted platform will drive meaningful production and operational synergies through complementary acreage positions, the application of technological expertise and greater access to capital to accelerate drilling. In addition, the transaction materially enhances the combined company's scale, providing a stronger credit profile and greater financial flexibility. The all-stock transaction will allow both Whiting and Kodiak shareholders to participate in the substantial upside potential inherent in the combination.

*   *   *

- 8 -

**Transaction Details**

Under the definitive agreement, Kodiak shareholders will receive .177 of a share of Whiting stock in exchange for each share of Kodiak common stock they hold, representing consideration to each Kodiak shareholder of $13.90 per share based on the closing price of Whiting common stock on July 11, 2014. This represents a premium of approximately 5.1% to the volume weighted average price of Kodiak for the last 60 trading days. Following the transaction, shareholders of Whiting are expected to own approximately 71% of the combined company on a fully diluted basis, and shareholders of Kodiak are expected to own approximately 29%.

The Whiting senior management team will lead the combined company. Lynn A. Peterson and James E. Catlin will join the Board of Directors of the combined company at closing of the transaction.

27.     On July 14, 2014, the Company filed a Current Report on Form 8-K with the U.S. Securities and Exchange Commission ("SEC") wherein it disclosed the Arrangement Agreement. Collectively, the announcement of the Proposed Transaction and the filing of the Arrangement Agreement reveal that the Proposed Transaction is the product of a flawed sale process.  The Arrangement Agreement further reveals that the Individual Defendants agreed to a number of draconian deal protection devices designed to preclude any competing bids for Kodiak from emerging in the period following the announcement of the Proposed Transaction.  As the Individual Defendants were duty bound to maximize shareholder value in connection with the Proposed Transaction, the inclusion of these provisions, as detailed below, constitutes a further breach of their fiduciary duties.

28.     Specifically, section 4.9 of the Arrangement Agreement subjects Kodiak to a strict no-solicitation clause that prohibits the Company from seeking a superior offer for its shareholders.  Section 4.9(a) states that:

The Subject Company shall not, nor shall it authorize or permit any of its Subsidiaries, any of its or their respective directors, officers, employees or any Representative to, directly or indirectly through another Person, (i) solicit, initiate, cause, knowingly encourage, or knowingly facilitate, any inquiries or the making of any proposal that constitutes or is reasonably likely to lead to a Takeover Proposal or (ii) participate in any discussions or negotiations regarding any Takeover Proposal, or furnish to any Person any information in connection with or in furtherance of any Takeover Proposal; provided that, so long as the Subject Company and its Representatives have otherwise complied with this Section 4.9, none of the foregoing shall prohibit the Subject Company and its representatives from contacting in writing any Person or group of Persons who has made a Takeover Proposal after the date of this Agreement solely to request the clarification of the terms and conditions thereof so as to determine whether the Takeover Proposal is a Superior Proposal, or is reasonably likely to lead to a Superior Proposal. Without limiting the foregoing, it is agreed that any violation of the restrictions set forth in the preceding sentence by any Representative of the Subject Company or any of its Subsidiaries shall be a breach of this Section 4.9(a) by the Subject Company. The Subject Company shall, and shall cause its Subsidiaries and instruct its Representatives to, immediately cease and cause to be terminated all existing discussions or negotiations with any Person conducted

heretofore with respect to any Takeover Proposal, request the prompt return or destruction of all confidential information previously furnished and terminate access to any electronic dataroom.

29.     Though the Arrangement Agreement ostensibly has a "fiduciary out" provision that allows the Company to negotiate with other bidders, it may only do so in the rare event that the potential acquirer first makes a "bona fide written" acquisition proposal which the Board determines, in good faith and after consultation with its financial and legal advisors, is "superior" to the Proposed Transaction.  Collectively, the inability of the Company to provide any non-public information to, much less communicate with, any third party regarding a potential transaction—as well as the fact that section 4.9(c) of the Arrangement Agreement requires Kodiak to notify Whiting of any potentially competing inquiry or offer it receives—renders the purported "fiduciary out" provision illusory and the likelihood of any rival bidder emerging, at best, miniscule.

30.     The likelihood of another offer emerging is even further reduced by the "matching rights" provision contained in section 4.9(b) of the Arrangement Agreement.  This provision requires the Company to provide Whiting with copies of the superior proposal and affords Whiting a remarkable three business-day window within which to consider and match the terms of any superior proposal received by the Company, thereby further dissuading any competing bidders from emerging.  Specifically, section 4.9(b) states that the Board of the Company shall not make a Change of Recommendation unless:

Neither the Subject Company Board nor any committee thereof shall (i) (A) withdraw (or modify in a manner adverse to the Other Party), or propose to withdraw (or modify in a manner adverse to the Other Party), the Company

Recommendation, where Company is the Subject Company, or the Acquiror Recommendation, where Acquiror is the Subject Company, (it being understood that taking a neutral position or no position with respect to a Takeover Proposal, other than a "stop, look and listen" statement in compliance with Rule 14d-9 promulgated under the Exchange Act, shall be considered an adverse modification) or (B) recommend, adopt or approve, or propose publicly to recommend, adopt or approve, any Takeover Proposal (any action described in this subclause (i) being referred to as an "Adverse Recommendation Change") or (ii) approve or recommend, or propose to approve or recommend, or allow the Subject Company or any of its Subsidiaries to execute or enter into, any letter of intent, memorandum of understanding, agreement in principle, merger agreement, arrangement agreement, acquisition agreement, option agreement, joint venture agreement, partnership agreement or other similar agreement constituting or related to, any Takeover Proposal (other than a confidentiality agreement pursuant to Section 4.9(a)). Notwithstanding the foregoing, the Subject Company Board may, prior to obtaining the Subject Company Shareholder Approval (and in no event after obtaining such applicable Subject Company Shareholder Approval), if the Subject Company Board determines in good faith (after receiving advice of its outside counsel) that it is necessary to do so in order to comply with its fiduciary duties of the Subject Company under applicable Law, (1) effect an Adverse Recommendation Change in light of a Superior Proposal or terminate this Agreement solely in order to concurrently enter into an agreement with respect to a Superior Proposal or (2) effect an Adverse Recommendation Change solely in

response to an Intervening Event, but, in each case, *only at a time that is after the third Business Day following the Other Party's receipt of written notice from the Subject Company* (an "Adverse Notice") advising the Other Party that the Subject Company Board has determined, in the case of the preceding subclause (1), that a Takeover Proposal is a Superior Proposal, that the Subject Company Board intends to make such Adverse Recommendation Change or to terminate this Agreement and containing all information required by Section 4.9(c), together with copies of any written offer or proposal in respect of such Superior Proposal, (it being agreed that any amendment to the financial terms or other material terms of such Superior Proposal shall require a new Adverse Notice and a new three Business Day period), and, in the case of the preceding subclause (2), that the Subject Company Board intends to make such Adverse Recommendation Change, a description of the Intervening Event and the reasons for the Adverse Recommendation Change (it being agreed that changes in circumstances shall require a new Adverse Notice and a new three Business Day period).

31.     Section 6.2(b) of the Arrangement Agreement subjects Kodiak to another preclusive deal-protection provision in the form of a $130 million termination fee payable to Whiting should a superior proposal ultimately be accepted.  This additional consideration would be paid directly to Whiting rather than Kodiak shareholders, thereby making it even more difficult for any competing bidder to acquire the Company.

32.     Collectively, these onerous and preclusive deal protection devices operate in conjunction to ensure that no competing offers will emerge for the Company and that the patently inadequate Proposed Transaction is consummated, thereby guaranteeing that the

Individual Defendants (along with certain other officers of Kodiak) will secure the personal financial benefits they negotiated for themselves in connection with the consummation of the Proposed Transaction.  Accordingly, the Individual Defendants' efforts to put their own personal interests before those of the Company's shareholders have resulted in the Proposed Transaction being presented to Kodiak shareholders at a potentially untenable and inadequate offer price which, arguably, cannot be topped by a competing bidder.

## FAILURE TO MAXIMIZE SHAREHOLDER VALUE

33.     The Individual Defendants' fiduciary duties require them to maximize shareholder value when entering into a change-in-control transaction such as the Proposed Transaction. Here, however, the Proposed Consideration to be paid by Whiting in the merger does not reflect the true inherent value of Kodiak as known only by the Individual Defendants, as directors and officers of the Company, and Whiting at the time the Proposed Transaction was announced.

34.     As an initial matter, the $13.90 per share Proposed Consideration represents a *discount* to shareholders of 2.3% to Kodiak's stock price of $14.23 on July 11, 2014, the final trading day prior to the announcement of the Proposed Transaction.  This discount stands in stark contrast to similar transactions in the oil and gas exploration and production industry.  Over the past five years, there have been seven transactions in the oil and gas exploration and production industry worth between $1 billion and $5 billion.  The average premium to the target company's previous day stock price for these deals 35.27%.

35.     Whiting shareholders are well aware that that they are receiving the benefit of Kodiak's operations at a significant discount.  Since announcing the Proposed Transaction, Whiting stock increased 8% following news of the merger.

36.     As the defendants are well aware, Whiting is well positioned to benefit from the acquisition of Kodiak's increasing efficiency and its productive capacity.  As noted by an analyst at Wunderlich Securities, Inc., Kodiak's current inventory consists of "about 1,200 locations on its current acreage position and at the current pace of 100 wells drilled each year obviously has over a decade of development on its plate.  This is a solid inventory number that should allow the company to experience growth for many years to come at highly economic rates that continue to improve as costs come down and the wells continue to perform."

37.     On July 31, 2014, Kodiak announced the Company's financial results for its second quarter ended June 30, 2014.  In particular, the Company announced: (i) oil and gas sales for the quarter of $300 million, an increase of $126.5 million, or 73%, versus the year ago period; (ii) adjusted EBITDA of $196.9 million, an increase of $65.8 million, or  50%, from a year ago; (iii) net cash provided by operating services of $183.1 million, an increase of 55%, versus the year ago period; and (iv) a 65% increase in equivalent sales volumes with 3.5 MMBOE sold, or an average of 38,71 BOE per day ("BOE/d") during the second quarter of 2014, as compared to 2.1 MMBOE, or an average of 23,205 BOE/d in the second quarter of 2013.

38.     In addition, there are substantial synergies created by the merger.  Whiting and Kodiak's highly complementary asset portfolios will create one of the industry's largest holders in the Bakken formation, benefiting from operational and production synergies resulting from complimentary geological positions.  Further, the combined company will be capable of daily production of more than 107,000 barrels of oil equivalents per day in the first quarter of 2014, control rights on 855,000 net acres, and 3,460 identified future potential drilling locations.

## INSIDERS REAP DISPROPORTIONATE BENEFITS
## FROM THE PROPOSED TRANSACTION

39.     Because the Individual Defendants dominate and control the business and corporate affairs of Kodiak and have access to material, non-public information concerning Kodiak's financial condition and business prospects, there exists and imbalance and disparity of knowledge and economic power between them and the Company's public shareholders. Therefore, it is inherently unfair for the Individual Defendants to execute and pursue any merger or acquisition under which they will reap disproportionate benefits to the exclusion of obtaining the best shareholder value reasonably available.

40.     Here, however, defendants have disloyally placed their own interests first and tailored the terms of the Proposed Transaction so as to aggrandize their own positions. Accordingly, the Proposed Transaction will improperly benefit the defendants at the expense of Kodiak's public shareholders' rights to receive the best consideration reasonably available for their Company shares.

41.     Indeed, despite their duty to maximize shareholder value, certain defendants have conflicts of interest and are acting to better their own interests at the expense of Kodiak's public shareholders.  For example, the directors and officers of the Company hold a block of over 6.5 million of shares of Kodiak common stock.  This large ownership of Kodiak stock makes it impossible for the Individual Defendants to sell their stock without driving down the Company's stock price.  The Proposed Consideration provides liquidity and other benefits for these illiquid holdings.

42.     The Individual Defendants were further motivated to engage in this transaction for additional reasons that are not equally shared by other shareholders, such as plaintiff.  For instance, defendants Peterson and Caitlin will join the board of directors of the combined

company.  Further, upon consummation of the Proposed Transaction, Kodiak's officers and directors stand to reap millions of dollars in special benefits unavailable to ordinary shareholders in currently restricted shares, performance shares, and unvested stock options.  In addition, following the close of the Proposed Transaction, certain officers and directors will receive change-of-control payments totaling more than $35 million.

43.     In order to meet their fiduciary duties, the Individual Defendants are obligated to explore transactions that will maximize shareholder value.  Due to the Individual Defendants' eagerness to enter into a transaction with Whiting, they failed to implement a process to obtain the maximum price for Kodiak shareholders.

44.     As a result of defendants' conduct, Kodiak's public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company.  In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

- Withdraw their consent to the sale of Kodiak and allow the shares to trade freely—without impediments such as the aforementioned no-solicitation, matching rights, and termination fee provisions;

- Act independently so that the interests of Kodiak's public stockholders will be protected;

- Adequately ensure that no conflicts of interest exist between defendants' own interests and their fiduciary obligation to maximize stockholder value or, if such conflicts exist, to ensure that all conflicts be resolved in the best interests of Kodiak's public stockholders; and

- Solicit competing bids to Whiting's offer without the impediments listed above to ensure that the Company's shareholders are receiving the maximum value for their shares.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action individually and as a class action on behalf of the Class comprised of all holders of Kodiak common stock who are being harmed by defendants' actions as described above.  Excluded from the Class are the defendants and any individual or entity related to, or affiliated with, any defendant.

46.     This action is properly maintainable as a class action.

47.     The Class is so numerous that joinder of all members is impracticable.  According to the Arrangement Agreement there are over 267 million shares of Kodiak common stock outstanding as of July 13, 2014.

48.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, inter alia, the following:

(a)     whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, good faith, diligence, fair dealing, independence, and/or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Transaction;

(b)     whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Transaction;

(c)     whether the Individual Defendants are conflicted or otherwise engaging in self-dealing in connection with the Proposed Transaction;

(d)     whether the Individual Defendants have breached any of their other fiduciary duties owed to plaintiff and the other members of the Class in connection with the Proposed Transaction;

(e)     whether the Individual Defendants are unjustly enriching themselves and/or the other insiders/affiliates of Kodiak in connection with the Proposed Transaction;

(f)     whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers designed to discourage other potentially interested parties from making an offer to acquire the Company or its assets;

(g)     whether Kodiak, aided and abetted any of the Individual Defendants' breaches of fiduciary duty owed to plaintiff and the other members of the Class in connection with the Proposed Transaction;

(h)     whether Whiting, aided and abetted any of the Individual Defendants' breaches of fiduciary duty owed to plaintiff and the other members of the Class in connection with the Proposed Transaction; and

(i)     whether plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

49.     The prosecution of separate actions by individual members of the Class would: (i) create a risk of inconsistent or varying adjudications with respect to individual members of the Class; (ii) establish incompatible standards of conduct for defendants; and/or (iii) result in adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not party to those adjudications thereby substantially impairing (or entirely impeding) their ability to protect their own personal interests.

50.     Plaintiff, whose claims are typical of the other Class members, is committed to prosecuting this action and has retained competent counsel who will draw on their extensive experience litigating actions of this nature in order to fairly and adequately represent and protect the interests of plaintiff and the Class.

51.     Plaintiff deso not have any interests adverse to the Class.  Accordingly, there will be no difficulty in the management of this litigation as a class action.  Indeed, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

52.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

53.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

54.     Pursuant to Rule 23.1 off the Federal Rules of Civil Procedure, plaintiff brings this action derivatively on behalf of Kodiak to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of defendants' misconduct.

55.     Plaintiff will adequately and fairly represent the interests of Kodiak in enforcing and prosecuting its rights.

56.     Plaintiff as a shareholder of Kodiak at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current Kodiak shareholder.

57.     At the time of the filing of this action, the current Board of Kodiak consists of five directors, defendants Peterson, Caitlin, Krysiak, Knutson, and Lidstone.  Plaintiff has not

made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

58.     Defendants Peterson, Caitlin, Krysiak, Knutson, and Lidstone are interested in the outcome of this litigation, as each was present on the Board and breached their fiduciary duty in causing Kodiak to enter into the Proposed Transaction.  As a result, these Individual Defendants each face a substantial likelihood of liability and are not disinterested in the outcome of this litigation.

59.     Therefore, a pre-suit demand upon the Board is a futile, wasteful, and useless act.

60.     Plaintiff has not made any demand on the shareholders of Kodiak to institute this action since such a demand would be a futile and useless act for at least the following reasons:

(a)     Kodiak is a publicly held company with over 267 million shares outstanding and potentially thousands of shareholders;

(b)     Making a demand on such a number of shareholders would be impossible for plaintiff who has no way of finding the names, addresses, or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force plaintiff to incur excessive expenses, assuming all shareholder could be individually identified.

## COUNT I

**Derivative Claim Against the Individual Defendants for Breach of Fiduciary Duties**

61.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

62.     The Individual Defendants owed and owe Kodiak fiduciary obligations.   By reason of their fiduciary relationships, the Individual Defendants owed and owe Kodiak the highest obligation of good faith, fair dealing, loyalty, and due care.

63.     The Individual Defendants are violating fiduciary duties owed to Kodiak by acting in furtherance of their personal interests in considering the Proposed Transaction without regard to the fairness of the Proposed Transaction to Kodiak.

64.     The Individual Defendants breached their fiduciary duties owed to Kodiak by, among other things:

(a)     Ignoring or not failing to protect against the numerous conflicts of interests resulting from their own interrelationships or connection with the Proposed Transaction; and

(b)     Failing to properly inform themselves of the market value of Kodiak prior to taking, or agreeing to refrain from taking, action concerning the Proposed Transaction.

65.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary duties, Kodiak has sustained substantial damages and is entitled to injunctive relief.

**COUNT II**

**Class Claim Against the Individual Defendants for Breach of Fiduciary Duties**

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     The Individual Defendants have violated the fiduciary duties of care, loyalty, and independence owed to the public shareholders of Kodiak and have acted to put their personal interests ahead of the interests of Kodiak shareholders.

68.     By the acts, transactions, and course of conduct alleged herein, defendants,

individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiffs and other members of the Class of the true value inherent in and arising from Kodiak.

69.     The Individual Defendants have violated their fiduciary duties by entering Kodiak into the Proposed Transaction without regard to the effect of the proposed transaction on Kodiak shareholders.

70.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and independence owed to the shareholders of Kodiak because, among other reasons:

(a)     they failed to take steps to maximize the value of Kodiak to its public shareholders;

(b)     they failed to properly value Kodiak and its various assets and operations; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

71.     Because the Individual Defendants dominate and control the business and corporate affairs of Kodiak, and are in possession of or have access to private corporate information concerning Kodiak's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Kodiak which makes it inherently unfair for them to pursue and recommend any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing shareholder value.

72.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

73.     The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

74.     As a result of the Individual Defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of Kodiak's assets and operations.  Unless the Proposed Transaction is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Transaction terms, and may consummate the Proposed Transaction, all to the irreparable harm of the members of the Class.

75.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

### COUNT III

**Claim for Aiding and Abetting Breaches of Fiduciary Duty Against
Whiting and Acquiror Canadian Sub**

76.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.     The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

78.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

79.     Defendants Whiting and Acquiror Canadian Sub colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to plaintiffs and the members of the Class.

80.     Defendants Whiting and Acquiror Canadian Sub participated in the breach of the fiduciary duties by the Individual Defendants, for the purpose of advancing their own interests. Defendants Whiting and Acquiror Canadian Sub obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants' breaches. Defendants Whiting and Acquiror Canadian Sub will benefit from the acquisition of the Company at an inadequate and unfair price if the Proposed Transaction is consummated.

81.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.     Declaring that this action is properly maintainable as a class and derivative action;

B.     Declaring and decreeing that the Arrangement Agreement was negotiated and/or executed in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

C.     Rescinding, to the extent already implemented, the Arrangement Agreement;

D.      Enjoining defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure reasonably designed to provide the best possible value for shareholders;

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sales process that is reasonably designed to secure the best possible consideration for Kodiak and obtain a transaction which is in the best interests of Kodiak's shareholders;

F.      Imposition of a constructive trust in favor of plaintiff and members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

G.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

H.      Granting such other and further equitable relief as deemed just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 6, 2014

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
EDWARD B. GERARD
JUSTIN D. RIEGER


*/s/Brian J. Robbins*
BRIAN J. ROBBINS

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsarroyo.com
soddo@robbinsarroyo.com
egerard@robbisnsarroyo.com
jrieger@robbinsarroyo.com

Attorneys for Plaintiff

969495

## VERIFICATION

I, Leanne Reiter, hereby declare as follows:

I am the plaintiff in the within entitled action. I have read the Verified Shareholder Derivative and Class Action Complaint for Breach of Fiduciary Duty. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: _8/5/14_____

_Leanne Reiter_____
LEANNE REITER